IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:20 CR 731 |
| v. | ) | CASE NO. |
| | ) | Title 18, United States Code, |
| ALFONZO D. BAILEY, | ) | Sections 1347, 1349 and 1957 |
| DAVID BROWN, | ) | |
| VALERIE WHITE, | ) | JUDGE BARKER |
| SANDRA WILSON, | ) | |
| CHERIA OLIVER, | ) | |
| CHARCHEE TUCKER, | ) | |
| ALLEN STEELE, | ) | |
| KAMELAH GANAWAY, | ) | |
| TREMAYNE KELLOM, | ) | |
| EYE FOR CHANGE YOUTH AND | ) | |
| FAMILY SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

I.      **Defendants**

1.      EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC. ("EYE FOR CHANGE") was incorporated in the State of Ohio as a domestic, non-profit corporation, on or about July 22, 2016.  EYE FOR CHANGE's primary office was located at 3100 East 45th Street, Suite 4800, Cleveland, Ohio 44127.  EYE FOR CHANGE purported to provide an array of services including mental health counseling, case management, job training, and supportive housing to at-risk populations.  On October 17, 2018, Company 1 was incorporated as a Domestic For Profit Corporation that was designed to take over the business of EYE FOR CHANGE.

1

2.      ALFONZO D. BAILEY ("BAILEY") was a resident of Cleveland, Ohio, and the incorporator and 100% owner of EYE FOR CHANGE and Company 1.

3.      DAVID BROWN ("BROWN") was a resident of Maple Heights, Ohio.  Among his various duties at EYE FOR CHANGE, BROWN was a marketer and Clients Rights Officer.

4.      VALERIE WHITE ("WHITE") was a resident of Columbus, Ohio.  Among her various duties at EYE FOR CHANGE, WHITE was a Qualified Mental Health Specialist (QMHS) and a counselor/therapist.  WHITE was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

5.      SANDRA WILSON ("WILSON") was a resident of Cleveland, Ohio.  Among her various duties at EYE FOR CHANGE, WILSON was an assessor and staffed the crisis hotline.  WILSON was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

6.      CHERIA OLIVER ("OLIVER") was a resident of Canal Winchester, Ohio.  OLIVER was employed as a QMHS at EYE FOR CHANGE and was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

7.      CHARCHEE TUCKER ("TUCKER") was a resident of Warrensville Heights, Ohio.  Among her various duties at EYE FOR CHANGE, TUCKER was employed as a QMHS, QMHS Supervisor, Lead Case Manager, and Director of Marketing and Compliance.  TUCKER was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

8.      ALLEN STEELE ("STEELE") was a resident of Parma, Ohio.  STEELE was employed as a QMHS at EYE FOR CHANGE and was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

9.      KAMELAH GANAWAY ("GANAWAY") was a resident of Macedonia, Ohio. GANAWAY was employed as a QMHS at EYE FOR CHANGE and was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

10.     TREMAYNE KELLOM ("KELLOM") was a resident of Cleveland, Ohio. KELLOM was employed as a QMHS at EYE FOR CHANGE and was to provide counseling services to EYE FOR CHANGE Medicaid beneficiary clients.

## II.    Medicaid Program

11.     The term "health care benefit program," as defined in 18 U.S.C. § 24, means any "public or private plan or contract, affecting commerce, under which any medical benefit, item or service" was provided to any individual, and includes any individual or entity who provides a medical benefit, item or service for which payment may be made under the plan or contract. Medicaid was a health care benefit program. The Centers for Medicare and Medicaid Services (CMS) was the agency responsible for the administration of the Medicaid program.  Medicaid paid health care providers, pursuant to written agreements, on the basis of reasonable charges for covered services provided to beneficiaries.

12.     Medicaid, established by Congress in 1965, provided medical insurance coverage for individuals whose incomes were too low to meet the costs of necessary medical services. Approximately 60% of the funding for Ohio's Medicaid program came from the federal government. The Ohio Department of Medicaid (ODM), headquartered in Columbus, Ohio, administered the Medicaid program in Ohio. ODM, received, reviewed, and obtained formal authority to make payment of Medicaid claims submitted to it by health care providers.

13.     ODM contracted with Medicaid Managed Care Organizations (MCOs) through contracts known as Contractor Risk Agreements (CRAs), which conform to the requirements of

42 U.S.C. §1395mm and §1396b(m), along with any related federal rules and regulations. MCOs were health insurance companies that provide coordinated health care to Medicaid beneficiaries. The MCOs contracted directly with healthcare providers, including hospitals, doctors, and other health care providers to coordinate care and provide the health care services for Medicaid beneficiaries. Providers who contract with an MCO were known as Participating Providers. Pursuant to the CRAs, ODM distributed the combined state and federal Medicaid funding to the MCOs, which then paid Participating Providers for treatment of Medicaid beneficiaries whose benefits were administered by MCOs.

14.     Individuals enrolled in the Medicaid program were commonly referred to as "recipients" or "beneficiaries." Eligible recipients obtained Medicaid coverage directly through ODM, also known as fee-for-service coverage, or joined a Medicaid MCO to manage their benefits.

15.     Pursuant to the rules and regulations of the Ohio Medicaid Program, including ODM and Medicaid MCOs, Medicaid only paid for services that were actually rendered by qualified individuals, and they must have been medically necessary and provided in accordance with Federal and State laws rules and regulations, including anti-kickback laws.

16.     Under the Ohio Medicaid Program, services rendered to Medicaid beneficiaries were required to be reasonable and necessary for the treatment or diagnosis of the beneficiary's medical condition. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services, or, in some circumstances, under the supervision of licensed professionals. Among other things, providers were required to document the services provided; document the date of service; and identify the provider who performed the service. Providers conveyed this information to ODM or an MCO by submitting

4

claims using billing codes and modifiers.  To be reimbursed from Ohio Medicaid Program for counseling services or behavioral health services, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicaid.  Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicaid.

17.     Providers who provided services to Medicaid beneficiaries used a number assigned to the patient to fill out claim forms. The claim form was submitted by the provider to make claims for payment to Medicaid. ODM and/or Medicaid MCOs processed each health insurance claim form and issued payment to the provider for the approved services.  Providers submitted claims in paper format or by electronic means.

18.     ODM and Medicaid MCOs used the written claim forms and/or electronic invoices to establish the validity of health care claims entitled to payment.  A provider who submitted claims to ODM, or Medicaid MCOs, certified that the treatment was provided by a qualified individual, actually given to the client as documented, and was medically necessary for the health of the patient.

19.     To become an eligible Medicaid provider, ODM and the Medicaid MCOs required providers to obtain a Provider Agreement by completing a Provider Enrollment Application.  BAILEY, on behalf of EYE FOR CHANGE, entered into a Provider Agreement with ODM on or about August 1, 2017, and agreed to abide by all the rules and regulations of the Medicaid program.  EYE FOR CHANGE also had provider agreements with CareSource, United Healthcare, Buckeye, and Wellcare.  These agreements allowed EYE FOR CHANGE to bill for medical services rendered by EYE FOR CHANGE employed providers to Medicaid recipients.

20.     On January 01, 2018, ODM updated the policies for providing mental/behavioral health services. Prior to this date, mental/behavioral health providers could submit claims to ODM without identifying the rendering practitioner on the claim.  After January 01, 2018, all rendering practitioners were required to enroll in the Medicaid program and affiliate with their employing agency.  Each behavioral health agency had to ensure that each of its corresponding employed providers was "affiliated."  ODM required that the rendering practitioner for behavioral health services be listed on claims submitted to ODM for payment.

21.     ODM required the enrolling practitioners to list the type of license, college degree, and/or years of experience.  ODM defined what services could be provided by a practitioner based on the practitioner's licensure and experience.

22.     A qualified behavioral health specialist (QBHS) was an individual who had received training for, or education in, either mental health or substance use disorders and had demonstrated, prior to or within ninety days of hire, the minimum competencies in basic mental health or substance use disorders.  A QBHS had to be supervised by an individual qualified to supervise the provision of services within their scope of practice.  A QBHS included both a qualified mental health specialist and a care management specialist.

### III.     Medical Billing and Coding

23.     Medical providers and health care benefit programs used well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments or procedures.  Current Procedural Terminology ("CPT") and Healthcare Common Procedure Coding System ("HCPCS") codes were used for billing Medicaid beneficiaries.

24.     Medical providers recorded diagnoses and medical procedures on a standard claim form known in the industry as the CMS1500 form, which was sent to the beneficiary's

6

health care benefit program. CPT codes had to be designated on the CMS 1500 claim form by the health care provider and then submitted either by mail or electronically to the health care benefit program for payment. By submitting claims using these CPT codes, providers represented to Medicaid that the services depicted in the codes were, in fact, performed or provided.

25.     Each Medicaid beneficiary was assigned a unique identification number by the Medicaid Program. Each beneficiary could be identified by reference to his/her unique identification number. Once enrolled in Medicaid, a beneficiary received covered medical services from Medicaid providers.

26.     CPT Code 90791 was designated for a Psychiatric Diagnostic Evaluation. ODM required the evaluation, also referred to as a mental health assessment, to be conducted by a credentialed professional prior to additional initiation of other services, except in emergency situations. The assessment was a clinical evaluation of a person which was individualized based on age and gender and was culturally appropriate. The assessment determined diagnosis and treatment needs, and was used to establish a treatment plan to address illness or a substance abuse disorder.

27.     ODM would only authorize payment of subsequent mental/behavioral health services if the Psychiatric Diagnostic Evaluation was conducted by a properly credentialed professional. A qualified mental health specialist (QMHS) would not be a credentialed professional and was unable to conduct a Psychiatric Diagnostic Evaluation.

28.     The development of the treatment plan was a collaborative process between the client and service provider based on a Psychiatric Diagnostic Evaluation, a continuing assessment of needs, and the identification of interventions and services appropriate to the

individual's diagnosis and other related needs. Providers could accept a mental health assessment from another provider as long as the assessment was completed within the preceding twelve months.

29.    A treatment plan had to be completed within five sessions or one month of admission, whichever was longer, and had to specify agreed upon treatment goals, document response to ongoing treatment, and present documentation that the patient signed off on the treatment plan.

30.    HCPCS Code H0036 was designated for Face-to-Face, by telephone, and/or video conferencing, Community Psychiatric Support Services (CPST). H0036 was billed on a per unit basis. Each unit was equal to 15 minutes of treatment. The purpose of CPST services was to provide specific, measurable, and individualized services to each person served. CPST services focused on the individual's ability to succeed in the community; to identify and access needed services; and to show improvement in school, work and family and integration and contributions within the community.

31.    HCPCS Code H2019 was designated for therapeutic behavioral services. H2019 was billed on a per unit basis. Each unit was equal to 15 minutes of treatment. The purpose of therapeutic behavioral services was to provide specific, measurable, and individualized services to each person served. Therapeutic behavioral services were goal directed and solution focused.

32.    CPT code 90837 was a billing code that described a 60 minute psychotherapy session performed by a qualified health care professional, face-to-face with a patient. It was the treatment of mental illness and behavioral disturbances through definitive therapeutic communication, attempts to alleviate the emotional disturbances, reverse or change maladaptive patterns of behavior, and encourage personality growth and development.

33.    Providers were required to document the services they provided, including the progress or lack of progress toward the achievement of specified treatment goals identified in the treatment plan and the continuing need for services.  Progress notes were required to have the client's name or Medicaid number, date and time of service and length of contact, location of service, description of service rendered, assessment of the client's progress or lack of progress, significant changes or life events, recommendations, and the signature and credential of the service provider along with the date of the signature.

## SCHEME TO DEFRAUD

34.    It was part of the scheme to defraud that at various times:

a.    BAILEY, BROWN, WHITE, WILSON, OLIVER, TUCKER, STEELE, GANAWAY, KELLOM, EYE FOR CHANGE, and others submitted, caused to be submitted, and allowed to be submitted billings, to Medicaid, for counseling services that were not actually performed.

b.    BAILEY, BROWN, WHITE, WILSON, EYE FOR CHANGE, and others submitted, caused to be submitted, and allowed to be submitted, billings to Medicaid for counseling services without the required Psychiatric Diagnostic Evaluation being performed by qualified individuals prior to the initiation of services.

c.    BAILEY, BROWN, WHITE, WILSON, EYE FOR CHANGE, and others submitted, caused to be submitted, and allowed to be submitted billings to Medicaid for counseling services without an appropriate treatment plan being developed for the clients prior to the initiation of services.

d.    BAILEY and EYE FOR CHANGE paid VALERIE WHITE and SANDRA WILSON, an LISW, to use WILSON's provider number and credentials on bills for

and documents regarding Psychiatric Diagnostic Evaluations, also known as mental health assessments, that WILSON never performed.

   e.  BAILEY, BROWN, TUCKER, EYE FOR CHANGE, and others paid and caused to be paid kickbacks in the form of cash, gift cards, and rent/bill payments to Medicaid beneficiaries to obtain the beneficiary as a client as well as to be able to bill Medicaid for services not rendered to beneficiaries.

   f.  BAILEY, BROWN, WHITE, WILSON, EYE FOR CHANGE, and others directed employees to misdiagnose Medicaid beneficiaries to continue to get authorization from ODM to provide services to the beneficiary and to bill at higher rates.

   g.  BAILEY, BROWN, OLIVER, TUCKER, STEELE, GANAWAY, KELLOM, EYE FOR CHANGE, and others directed and allowed employees to insert false progress notes into Medicaid beneficiary electronic records and created false progress notes.

COUNT 1
(Conspiracy to Commit Health Care Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

35.  The Grand Jury realleges and incorporates by reference the factual allegations set forth in paragraphs 1 through 34 of the Indictment as if fully restated herein.

36.  From on or about February 10, 2017, to in or around September 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants ALFONZO D. BAILEY, DAVID BROWN, VALERIE WHITE, SANDRA WILSON, CHERIA OLIVER, CHARCHEE TUCKER, ALLEN STEELE, KAMELAH GANAWAY, TREMAYNE KELLOM, EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., and others, did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others both known and unknown to knowingly and willfully execute and attempt to execute a scheme and

10

artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations and promises, money owned by, and under the custody and control of, a health care benefit program, namely, Medicaid and Medicaid MCOs, in connection with the delivery of or payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347 (Health Care Fraud).

OBJECTS OF THE CONSPIRACY

37.     The objects of the conspiracy were to (1) defraud Medicaid and Medicaid MCOs; (2) obtain payments on claims to which the conspirators knew they were not entitled; (3) enrich the conspirators; and (4) prevent detection of their conspiracy.

MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

38.     The conspirators carried out the conspiracy through the manner and means alleged in Paragraph 34 above.

ACTS IN FURTHERANCE OF THE CONSPIRACY

**I.      Services Not Rendered**

      A.      Texts between BAILEY and BROWN

39.     On or about the date and time listed below, BAILEY and BROWN sent the following text message, in which they discussed services billed but not rendered, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | September 19, 2017 1:18:48 PM | BAILEY | BROWN | You need to call Ms. P[] your family Solutions client she is complaining that she has not seen you and it's probably because she has kids on our caseload here and our case manager is seeing those kids on a regular basis so it's |

11

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| | | | | making her recognize that her other kids that you are billing on downstairs are not being seen that might be a problem for you I would suggest you clean it up |

B.     Texts between BAILEY and L.B.

40.     On or about the date and time listed below, BAILEY and L.B. sent the following text message, in which they discussed services billed but not rendered, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | November 10, 2019 9:40:37 PM | BAILEY | L.B. | This is exactly why you don't a job because you should have never had any late notes how the f------d you have late melting you're not even see and people it makes no sense so just chalk it up you've gotten plenty appurts you've been on trips you've I have a f----n $1000 pair of shoes that I have to figure out finding the receipt to take back come on now and you tripping over hours that you really didn't even work anyway |

C.     Texts between BAILEY and OLIVER

41.     On or about the dates and times listed below, BAILEY AND OLIVER sent the following text messages, in which they discussed services billed while travelling, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | November 2, 2019 11:38:26 AM | BAILEY | OLIVER | Wyd today |
| b | November 2, 2019 11:41:02 AM | OLIVER | BAILEY | Getting on a cruise ship ◆◆◆◆ |
| c | November 2, 2019 11:45:07 AM | BAILEY | OLIVER | Oh wow cool when you back |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| d | November 2, 2019 12:07:06 PM | OLIVER | BAILEY | On the 12th. I'm super excited |
| e | November 6, 2019 2:27:15 PM | BAILEY | OLIVER | You enjoying yourself |
| f | November 6, 2019 2:30:59 PM | OLIVER | BAILEY | I am. All the different countries are beautiful |
| g | November 6, 2019 2:31:27 PM | BAILEY | OLIVER | Cool..you doing your notes |
| h | November 6, 2019 2:31:42 PM | BAILEY | OLIVER | You don't want to come back with check |
| i | November 6, 2019 2:31:48 PM | OLIVER | BAILEY | Yes I am. |
| j | May 11, 2020 11:23:38 PM | OLIVER | BAILEY | I'm going to do notes! I'm over the boys today TBH |

D.   Texts between BAILEY and KELLOM

42.   On or about the dates and times listed below, BAILEY and KELLOM sent the following text messages, in which they discussed services not rendered, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 19, 2019 12:31 PM | KELLOM | BAILEY | Yea lol I'm doing notes now |
| b | October 29, 2019 2:27 PM | KELLOM | BAILEY | As long as I dont bill the same time right…how will Medicaid know…its the same as other people billing for other companies as long as they are not billing at the same time…I'll keep my numbers at 30 a week? |

## II.   Use of SANDRA WILSON'S NPI and Credentials

A.   Texts between BAILEY and BROWN

43.   On or about the dates and times listed below, BAILEY AND BROWN sent the following text messages, in which they discussed using WILSON'S NPI and credentials, each text constituting a separate overt act:

13

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | January 8, 2018 10:29:50 PM | BAILEY | BROWN | David this Columbus shit is crazy... |
| b | January 8, 2018 10:34:05 PM | BROWN | BAILEY | You know what imma just do the shit understand here name reset that birch passcode please |
| c | January 8, 2018 10:34:26 PM | BROWN | BAILEY | All the shit |
| d | January 8, 2018 10:34:48 PM | BROWN | BAILEY | I'll have all seven people knocked out tomorrow |
| e | January 8, 2018 10:35:21 PM | BAILEY | BROWN | Don't worry about it tomorrow I'm calling the board and I'm calling God's don't she's getting fired tomorrow and from now on this Columbus shit I will handle it and I'm going to either hire somebody to handle it this was a debacle absolute debacle and we all have blood on our hands from it all of us |
| f | January 8, 2018 10:38:49 PM | BROWN | BAILEY | Val said she will put it all in |
| g | January 8, 2018 10:38:59 PM | BROWN | BAILEY | She said she was going to speak with u |
| h | July 7, 2018 6:16:56 PM | BAILEY | BROWN | So what's your suggestion here I need some advice should I try Val or should I call Sandra directly I've been telling you that I thought we should be making a list of all these assessments and giving her information in case somebody ever call and talk to her at least she can speak intelligently about who she assess who the client is what diagnosis she made and what day she did the assessment |

B.    Texts between BAILEY and WHITE

44.    On or about the dates and times listed below, BAILEY AND WHITE sent the following text messages, in which they discussed using WILSON'S NPI and credentials, each text constituting a separate overt act:

14

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | July 14, 2018 11:28:38 AM | BAILEY | WHITE | Do you know she's getting money every two weeks as well I mean it's not like we're not paying her I don't understand why she can't just kind of sit still and make the money I think she's gotten at least three to four thousand dollars over the last couple months not to tell you all her business |
| | | | | But what I need is her name her birthdate her social her address to get her NPI number and then I'll go ahead and fill out the information to get her Medicaid number I also need a W-9 signed from her |
| b | July 14, 2018 11:29:23 AM | WHITE | BAILEY | She splits it with me |
| c | July 14, 2018 4:51:24 PM | BAILEY | WHITE | When do you think you're going to be able to get all the information from Sandra |
| d | July 14, 2018 4:56:22 PM | WHITE | BAILEY | Tomorrow |
| e | July 14, 2018 4:56:31 PM | WHITE | BAILEY | Tell me what you need |
| f | July 14, 2018 4:57:02 PM | WHITE | BAILEY | Email me anything u need signed |
| g | October 26, 2018 5:26:13 PM | BAILEY | WHITE | Also what does Sandra want to do I mean she's got a good situation going it probably would be less if she came full time |

## III.  Kickbacks

### A.  Texts between BAILEY and BROWN

45.  On or about the dates and times listed below, BAILEY AND BROWN sent the following text messages, in which they discussed kickbacks, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 20, 2017 9:30:23 AM | BROWN | BAILEY | Two thing it's this client Jackie sent to for vocational and the |

|  | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
|  |  |  |  | client calling saying she is due 100 dollars and is raising hell can we contact the family |
| b | December 20, 2017 9:34:10 AM | BAILEY | BROWN | 1st, this J[] Client is owed 50 bucks and I told L[] to tell her that she would get it on Friday. We have signed Vocational sheets where she signed for her money. She can raise all the stink she wants. |

### B.    Texts between BAILEY and TUCKER

46.    On or about the date and time listed below, BAILEY AND TUCKER sent the following text message, in which they discussed kickbacks, each text constituting a separate overt act:

|  | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 22, 2017 8:26:25 AM | BAILEY | TUCKER | Additionally I do have about 50 McDonald's gift cards I will be sending L[] out to get an additional hundred gift cards or an additional 60 30 from Chipotle and 30 from Wendy's and then you can call the case managers and have them come in today to pick them up to give out to their families for the older kids |

## IV.    False Documentation

### A.    Texts between BAILEY and BROWN

47.    On or about the dates and times listed below, BAILEY AND BROWN sent the following text messages, in which they discussed false documentation, each text constituting a separate overt act:

|  | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | June 21, 2017 9:20:05 PM | BAILEY | BROWN | and I appreciate that and meet offering money or talking about money is not about that it's about |

|   | Date/Time | Sender | Recipient | Content |
|---|-----------|--------|-----------|---------|
|   |           |        |           | rewarding you for your loyalty and your friendship<br><br>now bout to business things the new van that you brought from N[] today didn't have a dent in the back or did somebody hit it sitting in front of the building<br><br>Also please make sure that you've read the clients rights policy because that is going to be a big issue for JCO<br><br>they are due in at 8 a.m. I will be at the office at 7 a.m. just to make sure we are as ready as we can be L<br>you do you realize the Val never got any of those papers signed for any of her clients so technically all that money if we were billing Medicaid we would have to pay back because we don't have signed treatment plans for not one of them legally |
| b | July 5, 2017 11:01:04 AM | BAILEY | BROWN | David,<br>Did you know that Val never turned in any of her paperwork for any of her cases any of our signed paperwork why are we still paying her in anybody for that matter if they're not going to follow the rules this is a problem in a constant problem the rules don't give followed but we still pay |
| c | November 30, 2018 10:47:29 AM | BAILEY | BROWN | THEY REPORTING ALTHEA TO THE SOCIAL WORK BOARD |
| d | November 30, 2018 10:49:32 AM | BROWN | BAILEY | Who is they A[] would do nothing like that u serious? |
| e | November 30, 2018 10:50:11 AM | BAILEY | BROWN | SHE MADE THE REPORTS THAT SHE MADE |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| | | | | THEY INVESTIGATED IT AND SPOKE TO THE CLIENTS AND THEY SAID NO... |
| f | November 30, 2018 10:50:50 AM | BAILEY | BROWN | A[] HAD THE CLIENTS CALL AND CANCEL SERVICE AND TELL THAT THEY DIDNT KNOW A[] AND THAT'S HOW THEY GOT TO TALK TO THEM |
| g | November 30, 2018 10:52:00 AM | BAILEY | BROWN | WE GOTTA FIX THIS, |
| h | November 30, 2018 10:52:33 AM | BAILEY | BROWN | I NEED TO GET ALL THOSE CLIENTS TO STATE THAT THEY DID SEE MS. ALTHEA AND THAT THEY JUST WANT TO CLOSE THEY CASE |
| i | November 30, 2018 10:52:59 AM | BAILEY | BROWN | TELL A[] SHE GOTTA GET HER PEOPLE TO SIGN STATEMENTS AS WELL<br><br>THIS LADY CANNOT LOOSE HER LICENSE THAT WOULD BE HORRID |
| j | June 20, 2018 7:16:41 PM | BROWN | BAILEY | It will be done by next billing u have to understand if I don't have real up to date signatures this will look bad |
| k | November 30, 2018 2:13:40 PM | BAILEY | BROWN | They want to talk with C[] M[] who is on A[] caseload can you give me her number prep her. I will give her 100 bucks if shell right  make a statement and talk to C[] |
| l | November 30, 2018 2:29:53 PM | BROWN | BAILEY | She called u just type up what u need her to sign |
| m | November 30, 2018 2:30:03 PM | BROWN | BAILEY | She cool she don't care like that |
| n | July 19, 2018 7:59:32 PM | BAILEY | BROWN | Dave some of the people you gave us that didn't want to attend the date we can write notes on at least half of them don't even have assessments or treatment plants in the system how quickly can you get those done C[] agree to write the notes for those people so that |

|   | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
|   |   |   |   | we can at least get that money which we need |
| o | June 19, 2019 8:15:50 AM | BAILEY | BROWN | He should never have just left them because the office people didn't know what to do with them so Mrs. S[] took them but the reality is the forgeries are so badd they all look like the exact same signature with a different name |
| p | June 19, 2019 8:21:03 AM | BAILEY | BROWN | I think it was a lot to go through for him to forge all 12 of them why isn't that your issue that was too far when they're people that he knows in he has been billing on for months it makes no sense to me hes always talked about he has a relationship with these kids and their families why not spend an hour or 2 to go get real signatures |
| q | June 19, 2019 8:25:24 AM | BAILEY | BROWN | All im saying is,  The one thing I know that he doesn't want is to be banned from doing medicaid billing anywhere and to have his school district contacted and them figure out that hes using kids from that school district then I won't have a job. Is all this worth it if their kids that he knows in families that he knows that he can just go get the signature which is what I should have done the 1st time that's all I'm saying no judgment I really don't care but is all this worth it |

B.     Texts between BAILEY and TUCKER

48.     On or about the date and time listed below, BAILEY AND TUCKER exchanged the following text message, in which they discussed false documentation, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | December 18, 2017 9:34:04 AM | BAILEY | TUCKER | Additionally David did cancel the training with the other people other than the two case managers so we do need you to work with them when we get down there to ensure that they're ready as best we can without a manual tomorrow I know he has at least 15 assessment scheduled and we're hoping to get more than that and we're all just going to try and get some done me you him A[] all of us are going to go in a room and take the information to do some assessments to get as many done and on the books as possible |

## V.   Billing for Unlicensed or Unqualified Individuals

### A.   Texts between BAILEY and BROWN

49.   On or about the dates and times listed below, BAILEY AND BROWN sent the following text messages, in which they discussed unlicensed or unqualified individuals, each text constituting a separate overt act:

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| a | August 18, 2017 12:17:11 AM | BAILEY | BROWN | Did you get any more progress notes completed and did you ever put in those couple assessments that was supposed to be in and I would like to know if you can early in the morning before miss B[] comes in to reprocess Billing do you want to submit on three people and a treatment plan I know the family they're cool |
| b | October 3, 2017 8:20:14 AM | BAILEY | BROWN | David, Did you finish the assessments and information for the three clients I gave you the parent of the clients are calling and asking for who is there service provider and I can't assign anyone until |

|  | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
|  |  |  |  | you complete the assessment and treatment plan |
| c | November 22, 2017 2:45:58 PM | BROWN | BAILEY | If I get my lsw can I do assessments |
| d | November 22, 2017 3:55:10 PM | BAILEY | BROWN | Yes |
| e | November 22, 2017 3:58:04 PM | BROWN | BAILEY | Ok I just paid to take test again |
| f | December 28, 2017 11:25:11 AM | BAILEY | BROWN | E[] need some help on her treatment plans I told her you were the best one that knows how to do them properly please help her I told her to come in the office tomorrow and kind of just bang them all out because we really can't bill on any of those Columbus people without the treatment plan being in the system |
| g | December 28, 2017 11:25:43 AM | BROWN | BAILEY | Cool I got u |
| h | December 31, 2017 6:40:43 PM | BAILEY | BROWN | What's going on Dave<br><br>I know that you were working on all a[]s assessment and treatment plans make sure they at least the assessment to get in the system tonight or before midnight or we're going to lose those because I have to change the system over tomorrow to the new coding set in any bills and their claims put in after that with different dates will be rejected |
| i | January 15, 2018 10:24:32 AM | BROWN | BAILEY | Just add the people and send me a list of people u want treatment plans on |
| j | January 15, 2018 3:14:39 PM | BAILEY | BROWN | Okay a couple things one I found out there are no reeds<br><br>The J[] are in the system you do have the I[]'s in the system<br><br>Additionally I have 267 clients that I have to go through to |

| | Date/Time | Sender | Recipient | Content |
|---|---|---|---|---|
| | | | | determine where they are in the process I probably won't be done until later this evening or first thing in the morning because I don't know which ones just need treatment plans |
| k | May 5, 2018 10:54:31 AM | BAILEY | BROWN | Sorry to hit you up with work on the weekend however you haven't been in the office all week so I haven't been able to round up and talk to you<br><br>How are the B[] assessments coming when you are done with all of them I will add her you can call me I will add her as an employee and you can begin doing the progress notes please do decent progress notes because T[] will see them don't do those BS ones you did for A[] |

All in violation of Title 18, United States Code, Section 1349.

COUNTS 2 - 9
(Health Care Fraud, 18 U.S.C. § 1347)

The Grand Jury further charges:

50.  The Grand Jury realleges and incorporates by reference the factual allegations set forth in paragraphs 1 through 34 of the Indictment as if fully restated herein.

51.  From on or about February 10, 2017, to in or around September 2020, Defendants ALFONZO D. BAILEY and EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC. did devise and intend to devise a scheme and artifice to defraud and to obtain money from federal health care benefit programs by means of false and fraudulent pretenses, representations and promises, to wit, the Scheme to Defraud alleged in paragraph 34(a).

52. On or about the dates specified as to each count below, in the Northern District of Ohio, Eastern Division, and elsewhere, the Defendants listed below knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicaid, and to obtain by means of false and fraudulent pretenses, representations described herein, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347.

53. On or about the dates listed below, in the Northern District of Ohio and elsewhere, the Defendants listed below did execute and attempt to execute the scheme described above by submitting the claims for reimbursement set forth below, each submission constituting a separate count:

| Count | Client | Claim Date | Amount Claimed | CPT Code | Benefit Program | Defendants |
|-------|--------|-----------|----------------|----------|-----------------|------------|
| 2 | F.P. | 12/3/2019 | $168.00 | H2019 | CareSource | TREMAYNE KELLOM ALFONZO BAILEY EYE FOR CHANGE |
| 3 | T.J. | 11/5/2019 | $126.00 | H2019 | CareSource | TREMAYNE KELLOM ALFONZO BAILEY EYE FOR CHANGE |
| 4 | L.C. | 11/18/2019 | $240.00 | H0036 | Buckeye | CHERIA OLIVER ALFONZO BAILEY EYE FOR CHANGE |
| 5 | M.C. | 11/18/2019 | $240.00 | H0036 | Buckeye | CHERIA OLIVER ALFONZO BAILEY EYE FOR CHANGE |
| 6 | C.H. | 6/10/2019 | $120.00 | H0036 | CareSource | KAMELAH GANAWAY ALFONZO BAILEY EYE FOR CHANGE |
| 7 | J.H. | 2/26/2020 | $160.00 | H0036 | CareSource | KAMELAH GANAWAY ALFONZO BAILEY EYE FOR CHANGE |
| 8 | D.L. | 1/19/2019 | $120.00 | H0036 | CareSource | ALLEN STEELE ALFONZO BAILEY |

| | | | | | | EYE FOR CHANGE |
|---|---|---|---|---|---|---|
| 9 | L.A.S. | 8/10/2018 | $120.00 | H0036 | CareSource | ALLEN STEELE ALFONZO BAILEY EYE FOR CHANGE |

All in violation of Title 18, Sections 1347, United States Code.

COUNTS 10 - 16
(Health Care Fraud, 18 U.S.C. § 1347)

The Grand Jury further charges:

54.     The Grand Jury realleges and incorporates by reference the factual allegations set forth in paragraphs 1 through 34 of the Indictment as if fully restated herein.

55.     From on or about February 10, 2017, to in or around September 2020, the Defendants listed below did devise and intend to devise a scheme and artifice to defraud and to obtain money from federal health care benefit programs by means of false and fraudulent pretenses, representations and promises, to wit, the Scheme to Defraud alleged in paragraph 34(d).

56.     On or about the dates specified as to each count below, in the Northern District of Ohio, Eastern Division, and elsewhere, the Defendants listed below knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicaid, and to obtain by means of false and fraudulent pretenses, representations described herein, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347.

57.     On or about the dates listed below, in the Northern District of Ohio and elsewhere, the Defendants listed below did execute and attempt to execute the scheme described

above by submitting the claims for reimbursement set forth below, each submission constituting

a separate count:

| Count | Client | Claim Date | Amount Claimed | CPT Code | Benefit Program | Defendants |
|-------|--------|------------|----------------|----------|-----------------|------------|
| 10 | A.H. | 6/18/2019 | $125 | 90791 | CareSource | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 11 | D.R. | 9/27/2019 | $126 | H2019 | United Health Care | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 12 | J.D. | 10/30/2019 | $110 | 90837 | CareSource | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 13 | C.J. | 10/16/2019 | $120 | H0036 | CareSource | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 14 | S.C. | 11/15/2019 | $120 | H0036 | United Health Care | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 15 | I.J. | 11/19/2019 | $120 | H0036 | CareSource | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |
| 16 | J.W. | 11/19/2019 | $120 | H0036 | CareSource | SANDRA WILSON VALERIE WHITE ALFONZO BAILEY EYE FOR CHANGE |

All in violation of Title 18, Sections 1347, United States Code.

<u>COUNTS 17 - 28</u>
(Money Laundering, 18 U.S.C. § 1957)

The Grand Jury further charges:

58.    The Grand Jury realleges and incorporates by reference the factual allegations set

forth in paragraphs 1 through 34 of the Indictment as if fully restated herein.

59.      On or about the dates listed below, in the Northern District of Ohio, Eastern

Division, and elsewhere, Defendant ALFONZO D. BAILEY ("BAILEY") did knowingly engage

in and attempt to engage in monetary transitions, as listed below, affecting interstate commerce

in criminally derived property of a value greater than $10,000.00, such property having been

derived from specified unlawful activities, those are, health care fraud, in violation of Title 18,

United States Code, Section 1347, and conspiracy to commit health care fraud, in violation of

Title 18, United States Code, Section 1349, to wit:

| Count | Date | Bank Account | Amount USD | Transaction Description |
|---|---|---|---|---|
| 17 | 7/23/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 72,500.00 | BAILEY wire transferred funds to Barristers of Ohio, LLC Disbursing to purchase real estate located at 1576 Coventry Road, East Cleveland, Ohio |
| 18 | 8/16/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 73,497.81 | BAILEY wire transferred funds to Barristers of Ohio, LLC Disbursing to purchase real estate located at 1576 Coventry Road, East Cleveland, Ohio |
| 19 | 9/13/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 89,155.95 | BAILEY wire transferred funds to River Title Company, LLC to purchase real estate located at 12305 Wanda Avenue, Cleveland, Ohio |
| 20 | 10/3/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 162,500.00 | BAILEY wire transferred funds to River Title Company, LLC to purchase real estate located at 2425 North Taylor Road, Cleveland, Ohio |
| 21 | 10/7/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 149,684.22 | BAILEY wire transferred funds to River Title Company, LLC to purchase real estate located at 12911 Brackland Avenue, Cleveland, Ohio |
| 22 | 10/28/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 164,610.84 | BAILEY wire transferred funds to River Title Company, LLC to purchase real estate located at 2425 North Taylor Road, Cleveland, Ohio |

| Count | Date | Bank Account | Amount USD | Transaction Description |
|-------|------|--------------|------------|-------------------------|
| 23 | 10/28/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 160,000.00 | BAILEY wire transferred funds to Chase Title & Escrow Services, LLC to purchase real estate located at 1257 E. Long Street, Columbus, Ohio |
| 24 | 11/14/2019 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 137,603.75 | BAILEY wire transferred funds to Chase Title & Escrow Services, LLC to purchase real estate located at 1257 E. Long Street, Columbus, Ohio |
| 25 | 4/1/2020 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 15,000.00 | BAILEY wire transferred funds to Search 2 Close Columbus to purchase real estate located at 1243 E Broad Street, Columbus, Ohio |
| 26 | 4/20/2020 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 175,000.00 | BAILEY wire transferred funds to Search 2 Close Columbus to purchase real estate located at 1243 E Broad Street, Columbus, Ohio |
| 27 | 4/30/2020 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 176,000.00 | BAILEY wire transferred funds to Search 2 Close Columbus to purchase real estate located at 1243 E Broad Street, Columbus, Ohio |
| 28 | 6/3/2020 | Eye for Change Youth & Family Services Inc. (PNC x0436) | 151,582.95 | BAILEY wire transferred funds to Search 2 Close Columbus to purchase real estate located at 1243 E Broad Street, Columbus, Ohio |
| | | | 1,527,135.52 | **Total Amount of Money Laundering Transactions** |

All in violation of Title 18, United States Code, Section 1957.

<u>FORFEITURE UNDER 18 U.S.C. § 982(a)(7)</u>

The Grand Jury further charges:

60.     The allegations of Counts 1-16 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).  As a result of these offenses, Defendants ALFONZO D. BAILEY, DAVID BROWN, VALERIE WHITE,

SANDRA WILSON, CHERIA OLIVER, CHARCHEE TUCKER, ALLEN STEELE, KAMELAH GANAWAY, TREMAYNE KELLOM, and EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., shall forfeit to the United States all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses; including, but not limited to, the following:

a.)     $850,957.80 seized pursuant to the execution of a federal seizure warrant on or about June 19, 2020, from PNC Bank non-profit checking Account Number ******0436.  The account is in the name of EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., and ALFONZO D. BAILEY is an authorized signor.

b.)     All contents (approximately $445,830.30) of PNC Bank non-profit checking Account Number ******0436.  The account is in the name of EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., and ALFONZO D. BAILEY is an authorized signor.

c.)     $1,004,962.83 seized pursuant to the execution of a federal seizure warrant on or about June 19, 2020, from PNC Bank business premium money market Account Number ******9986.  The account is in the name of EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., and ALFONZO D. BAILEY is the authorized signor.

d.)     $12,902.70 seized pursuant to the execution of a federal seizure warrant on or about June 19, 2020, from PNC Bank non-profit checking Account Number ******9362.  The account is in the name of EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC., and ALFONZO D. BAILEY is an authorized signor.

e.)     The real property located at 12305 Wanda Avenue, Cleveland, Ohio; Permanent Parcel No. 019-22-102.  The property was purchased on or about September 16, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

f.)     The real property located at 1576 Coventry Road, East Cleveland, Ohio; Permanent Parcel No. 672-26-078. The property was purchased on or about August 19, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

g.)     The real property located at 2425 North Taylor Road, Cleveland Heights, Ohio; Permanent Parcel Nos. 681-11-011 & 681-11-012 & 681-11-013. The property was purchased on or about October 31, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

h.)     The real property located at 12911 Brackland Avenue, Cleveland, Ohio; Permanent Parcel No. 110-09-095. The property was purchased on or about October 7, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

i.)     The real property located at 1257 East Long Street, Columbus, Ohio; Permanent Parcel No. 010-056787-00. The property was purchased on or about November 19, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

j.)     The real property located at 3411 West 41st Street, Cleveland, Ohio; Permanent Parcel No. 015-07-015. The property was purchased on or about October 16, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

k.)     The real property located at 1243 East Broad Street, Columbus, Ohio; Permanent Parcel No. 010-038351-00. The property was transferred to the titled owner - EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC. - on or about August 10, 2020.

## FORFEITURE UNDER 18 U.S.C. § 982(a)(1)

The Grand Jury further charges:

61.     The allegations of Counts 17-28 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1). As a result of

these offenses, Defendant ALFONZO D. BAILEY shall forfeit to the United States all property, real and personal, involved in such offenses, and all property traceable to such property; including, but not limited to, the following:

a.)    The real property located at 12305 Wanda Avenue, Cleveland, Ohio; Permanent Parcel No. 019-22-102.  The property was purchased on or about September 16, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

b.)    The real property located at 1576 Coventry Road, East Cleveland, Ohio; Permanent Parcel No. 672-26-078.  The property was purchased on or about August 19, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

c.)    The real property located at 2425 North Taylor Road, Cleveland Heights, Ohio; Permanent Parcel Nos. 681-11-011 & 681-11-012 & 681-11-013.  The property was purchased on or about October 31, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

d.)    The real property located at 12911 Brackland Avenue, Cleveland, Ohio; Permanent Parcel No. 110-09-095.  The property was purchased on or about October 7, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

e.)    The real property located at 1257 East Long Street, Columbus, Ohio; Permanent Parcel No. 010-056787-00.  The property was purchased on or about November 19, 2019, and is titled to EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC.

f.)    The real property located at 1243 East Broad Street, Columbus, Ohio; Permanent Parcel No. 010-038351-00.  The property was transferred to the titled owner - EYE FOR CHANGE YOUTH AND FAMILY SERVICES, INC. - on or about August 10, 2020.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.