IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>  Plaintiff,   )<br>  )<br>v.   )<br>  )<br>ALFONZO BAILEY, VALERIE   )<br>WHITE, CHERIA OLIVER, EYE FOR   )<br>CHANGE YOUTH AND FAMILY   )<br>SERVICES, INC., QUIANA BELL,   )<br>DONALD HENDERSON, CHELSEA   )<br>TARVER, LESIA NIAMKE.[1]   )<br>  )<br>  Defendants.   ) | CASE NO. 1:20-CR-731-PAB-1, 3, 5, 10, 12, 15, 18, 21<br><br>JUDGE PAMELA A. BARKER<br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court upon the Defendants' Appeal Of, And Objections To, Opinion And Order Of Magistrate, (Doc. #363) filed on March 22, 2022 ("Defendants' Objections"). (Doc. No. 368.) On April 5, 2022, the United States filed the Government's Opposition to Defendants' Objections ("the Government's Opposition"), and on April 12, 2022, Defendants filed their Reply In Support Of Defendant's Objections ("Defendants' Reply"). (Doc. Nos. 376, 379.) For the following reasons, Defendants' Objections are overruled and Magistrate Judge Greenberg's Report and Recommendation (Doc. No. 363) is ADOPTED, with the additional order that the Government issue an administrative subpoena pursuant to 18 U.S.C. § 3486 to retrieve the original computers and devices from Defendant Eye for Change, and make those original computers and devices available to defense counsel to review the original data in its native form on dates and at times for individual review with their respective clients.

---

[1] It is these eight Defendants that filed the Appeal Of, And Objections To, Opinion And Order Of Magistrate (Doc. #363).  Throughout this Memorandum Opinion and Order, any reference to Defendants is to these eight (8) Defendants.

1

I.  Background

On September 10, 2021 Defendants filed a Joint Motion to Compel Production of ESI in Usable Format or, In the Alternative, Motion to Authorize Expenditure of funds to obtain Experts to Access ESI ("Defendants' Motion to Compel"). (Doc. No. 281.) On October 18, 2021, the Government filed its Response in Opposition to Defendants' Motion to Compel (Doc. No. 287).[2]

On October 11, 2021, Defendants filed their Reply in support of Defendants' Motion to Compel ("Defendants' Reply") (Doc. No. 303). At page 6 of Defendant's Reply, Defendants set forth their requested relief as follows:

> [O]rder the government to produce electronically stored information in a searchable and usable format for counsel to effectively represent their clients. In addition, the defendants request an order instructing the government to provide specific evidence from the massive amount of data provided thus far which it intends to use in its case-in-chief. Alternatively, the defendants request an order authorizing expenditure of funds to engage the services of forensic computer experts who will review the data provided in discovery, and reproduce it in a usable and searchable format so that counsel can effectively represent their clients.

On October 18, 2021, the Court referred Defendant's Motion to Compel to Magistrate Judge Greenberg for a Report and Recommendation. On February 11, 2022, Magistrate Judge Greenberg conducted a hearing on Defendants' Motion to Compel. During the hearing, Defendants confirmed that their Motion to Compel "is strictly limited to the fifth discovery

---

[2] On February 10, 2022, the Government filed a Notice of Submission of Exhibits in Support of Opposition to Motion to Compel (Doc. No. 344) and attached three exhibits: Exhibit 1 is the FTK Imager User Guide (Doc. No. 344-1), or "the instructions the Government provided to Defendants' counsel along with the free version of the software that could be used to view the data" (Doc. No. 376, PageID # 1902); Exhibit 2 is a document the Government titled "FTK Screen Shots" (Doc. No. 344-2) and had "created by assembling screen shots of how to use the free software and what defense counsel are capable of seeing with it, using one of Defendant Bailey's computer images as an example" (Doc. No. 376, PageID # 1902); and Exhibit 3 is titled "Index of Computers" (Doc. No. 344-3) and is a "chart the government created that cross-references the computers imaged during the execution of the search warrant with the photos taken during the search warrant so that defense counsel can more easily select which forensic images are most relevant to their needs." (Doc. No. 376, PageID # 1903.) On February 11, 2022, the Government filed an Amended Exhibit 3 or an "Updated Index of Computers". (Doc. No. 348-1.)

production, the so-called hard drives" that contained 2.96 terabytes of data, and an FTK viewer or imager. (Doc. No. 360, PageID #s 1607, 1609.) Defendants called Michael Zinn ("Zinn"), an information technology systems engineer employed by Micro Systems Management, as a witness on their behalf. Zinn testified that the FTK Imager that was provided by the Government to Defendants has the primary function of, or is designed to, create a forensically sound bit-for-bit copy of the data that is stored on a device. (*Id.*, PageID #s 1613, 1614, 1620.) According to Zinn, FTK, or the Forensic Toolkit, is the full version of software that is designed as an examination and analysis solution and includes additional side tools that allow analysis and examination of the data contained in a forensic image. (*Id.*) Zinn testified that he would not use the FTK Imager to examine a large volume of data because "[i]t would very likely be slow, cumbersome, and ultimately costly to the customer"; "it's not designed to parse, search and examine a large volume of data." (*Id.*, PageID # 1624.) Zinn testified that with the Forensic Toolkit, one could search through images more quickly, construct searches for content and perform carve-outs of things like operating system files, "things that really wouldn't be relevant to take a look at because they don't contain kind of user-created data." (Doc. No. 360, PageID #s 1648-49.)

Zinn testified that in terms of the licensure associated with the FTK ToolKit, the last time he had checked, it was a two-year contract that cost $5,000, and there are two types of licenses: 1.) "a software-based license where there is not a traditional physical key that plugs in" and his understanding was that "one license, you can use it on one system at a time"; and 2.) a license with a key, which "absolutely limi[s] [you] to one system because it has to be physically plugged into the system." (Doc. No. 360, PageID # 1645.) Zinn explained that in general, "[e]ach individual who wants to review the data on their own system is going to need to have their own hardware, their own software, their own license. They're not going to be able to share content and things of

3

that nature." (*Id.*) He went on to identify "the best solution" as "working with a larger eDiscovery provider." (*Id.*, PageID #s 1645-55.) There was no evidence presented at the hearing regarding the projected estimated cost of working with a larger eDiscovery provider.

During his direct examination, Zinn demonstrated the use of the FTK Imager interface that would be used to access the data on the hard drive, and he gave a narrative of the step-by-step process of finding and opening the forensic image files. (Doc. No. 360, PageID #s 1628-1630.) According to Zinn, you would enumerate through the different partitions and find partition two, the user-created partition, and expand it, at which time it would open and show a number of different sections, with the root being the actual drive contents. (Doc. No. 360, PageID #s 1631-32.) Then, while looking at the C drive on a Windows system, you would need to choose where you want to look to try to find where there is data that you are interested in. (Doc. No. 360, PageID # 1632.) By process of elimination, you could determine the user profile in question on the image. (*Id.*) Ultimately, Zinn confirmed that to identify what computer or laptop the information was on, "would be through information the government disclosed identifying how they labeled these forensic images and what systems those correspond to."[3] (Doc. No. 360, PageID # 1632.) And, to find a document in the hard drive, you could go to the desktop folder for, example, Eye for Change, and there would be a list of the contents of the desktop for that user profile. (*Id.*)

---

[3] On cross-examination, Zinn confirmed that with Exhibit 3, or "the key that shows the devices and the search rooms," and an image, "if you sat down with the actual person who used that device…and he could tell you which room he used the computer in, based on the search warrant photos, he could point to it and say, 'That's the room that I worked in, that's the computer that I worked on,' and then use the key to go to the exact image..." that is "something that would help you drill down through the entire,…almost 3 terabytes of data to one image in particular and kind of expedite your review of the materials on that terabyte, that hard drive[.]" (Doc. No. PageID # 1649.) Zinn assumed that if you were focusing on one image and you had the actual user of that computer with you to help you, that user could help direct where documents would be stored on the computer. (*Id.*) Zinn went on to say that having the user with you advising where he kept documents would assist in finding documents, with the exception of temporary documents that are created by the software application; and although you could not preview within the software itself anything, i.e., any types of files that require some other type of external purchase software but would have to extract it, you could see the file name and see that it is a Microsoft Word file, for example, then export it to the computer so as to use the actual software type, and open it and look at it. (*Id.*, PageID #1651-52.)

According to Zinn, because "there aren't filters and search functionality in FTK Imager…it's going to be a manual review process of navigating through the computer and looking for things." (Doc. No. 360, PageID # 1637.)

On cross-examination Zinn testified that he briefly read through the Government's Exhibits (Doc. Nos. 347-1, 2, 3 and Doc. No. 348) and that Exhibit 1 appeared to be the FTK User Guide; Exhibit 2 was basically a step-by-step of screen shots that was very similar to the demo that Zinn had conducted during his direct examination by Defendants' counsel at the hearing which was "consistent with the general process" about how one might install the FTK Imager software and use it to look at a particular image on the drive; and he saw Exhibit 3, characterized as a kind of "key about which devices were located where during the execution of the search warrant." (Doc. No. 360, PageID #s 1646-47.) Zinn also confirmed that he was able to open one of the images on the hard drive by using his installed FTK Imager. (Doc. No. 360, PageID # 1648.)

The parties filed post-hearing briefs,[4] and on March 8, 2022, Magistrate Judge Greenberg issued his Report and Recommendation denying Defendants' Motion to Compel, relying in large part on the Sixth Circuit's decision in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010); relying on the testimony of Zinn to conclude that "the discovery materials are not 'nearly as unsearchable' as the defendants claim"; and rejecting Defendant's *Brady* argument and concluding that there is no evidence the government performed its *Brady* obligations in bad faith. (Doc. No. 363, PageID #s 1718-22.) Magistrate Judge Greenberg also found the "relief requested unreasonable." (*Id.*, PageID # 1722.) He found Defendants' request to order the government "'to provide each defendant with the data on the hard drive in a usable and reasonably accessible format with a program for that purpose' (Doc. No. 358 at 10)" to be "impossible given Defendants'

---

[4] Doc. Nos. 358, 359.

5

argument and Zinn's testimony at the hearing." (Doc. No. 363, PageID # 1722.) In Magistrate Judge Greenberg's opinion, then, that left Defendants only with their request for funding "'to hire an expert to provide necessary services that will enable counsel the basic and necessary ability to search, filter and review the discovery provided by the government on the hard drive and thereby render the effective assistance required of defense counsel in preparing defenses to the charges.' (*Id.*)" (Doc. No. 363, PageID # 1723.) And, in rejecting this requested relief, Magistrate Judge Greenberg concluded that Defendants had failed to present the Court "with an estimated range of the expenses for such services, as the $16,940 estimate was only for 'inventory' of the data and not for hosting or searching the data." (Doc. No. 360 at 100.)" (*Id.*)

## II.     Standard of Review

Pursuant to Fed. R. Civ. P. 72(a), "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide", "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A), which provides in relevant part that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," and "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

The Court has reviewed the Report and Recommendation, the transcript of the February 11, 2022 hearing, and the parties' submissions, to include the legal authority cited therein. For the reasons set forth below, the Court finds that Magistrate Judge Greenberg's order is not clearly erroneous or contrary to law and therefore, adopts the Report and Recommendation. The Court modifies it only to include an order that the Government issue an administrative subpoena pursuant

6

to 18 U.S.C. § 3486 to retrieve the original computers and devices from Defendant Eye for Change and make those original computers and devices available to defense counsel to view the data in its original form on dates and at times for individual review with their respective clients.

### III. Analysis

In Defendant's Objections, Defendants assert that Magistrate Judge Greenberg's Order denying Defendants' Motion to Compel was "clearly erroneous or contrary to law." They argue that Magistrate Judge Greenberg erred for five reasons: 1.) he failed to appropriately consider the uncontradicted testimony of Defendants' Witness, Michael Zinn; 2.) his reliance on *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010) is misplaced and numerous other cases demonstrate that the relief Defendants seek should be granted; 3.) he ignored the considerable costs to Defendants of the FTK program and the unavailability of hardware or systems to host the hard drive created by the government; 4.) he apparently accepted the government's arguments that it can subpoena the devices in question and then give the Defendants access to the hard drive because this provides no remedy to the difficulties and impossibilities of reasonable access to and unsearchability of the hard drive the government created; and 5.) he failed to appropriately consider the constitutional implications of counsel for criminal defendants not being able to access discovery.

In the Government's Opposition, it asserts that *Warshak* compels the denial of Defendants' Objections and Defendants' attempts to circumvent *Warshak* are unavailing. First, the Government correctly quotes from that decision in relevant part, to wit: "Federal Rule of Criminal Procedure 16, which governs discovery in criminal cases, is entirely silent on the issue of the form that discovery must take; it contains no indication that documents must be organized or indexed." *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010). Next, the Government argues that

7

three facts present in *Warshak* that supported the Court's conclusion therein that the government had fulfilled its obligations under Criminal Rule 16, are present herein, as Magistrate Judge Greenberg concluded. And, finally, the Government asserts that none of Defendants' five asserted errors are meritorious. The Court addresses each of Defendants' asserted errors below.

First, the Court disagrees with Defendants' assertion that Magistrate Judge Greenberg failed to appropriately consider the uncontradicted testimony of Michael Zinn. Defendants characterize Zinn's testimony as demonstrating "the extreme burdens" that would be placed upon Defendants to access evidence in this case. This Court's review of the entire testimony of Michael Zinn reveals that Zinn did testify that with the Forensic Toolkit, one could search through images, more quickly, construct searches for content and perform carve-outs, but that Zinn also testified about and demonstrated the process by which one could manually review the process of navigating through the computer and look for things, and the way in which defense counsel, with his or her client, could use the key provided by the Government to locate documents. While this process may be more onerous than Defendants would like, the fact remains that it can be done absent this Court authorizing the initial $16,940 requested for only inventory of the data, and the future unknown and admittedly uncalculatable expense of hosting or searching for the data. And, as the Government points out, "the extreme burdens" the Defendants assert are imposed upon their counsel is inherent in the amount of data that Eye for Change maintained at its business premises and its use of generic logins as opposed to user specific logins for the computers and devices in the office. Although the Government created a hard drive and provided it to defense counsel, the data contained therein is Defendants' own data, albeit in a different format. However, the Court is ordering the Government to subpoena the computers and devices from Eye for Change to allow each Defendant, through counsel, to access the data in its original format.

8

Second, the Court rejects Defendants' assertion that Magistrate Judge Greenberg's reliance on *Warshak* is misplaced.  In his Report and Recommendation Magistrate Judge Greenberg analyzed *Warshak* and, in this Court's opinion, correctly interpreted and applied this Sixth Circuit precedent to the analogous facts of this case, in finding that: the discovery Defendants seek was taken directly from Eye for Change computers and therefore, "any difficulty the defendants had in accessing the copies on the hard drives is 'arguably immaterial'"; the "problem of multiple devices is a problem of defendants' own making, since they used generic logins as opposed to user specific logins for the computers and devices in the office"; and to alleviate any concern associated with access to the computers and devices returned to Eye for Change, the Government did offer to issue an administrative subpoena to Eye for Change and make them available to each Defendant separately, on a date and at a time specifically scheduled for that purpose.  Indeed, the Court is ordering the Government to do so.  As to Defendants' argument that *Warshak* is distinguishable from this matter because in *Warshak* the court noted that the defendants were able to access the contents of the ESI, as shown by their use of such materials in several motions and their expert witness's testimony that with the use of certain software he could easily search the ESI, the Court offers the following.  Defense counsel should be able to access the contents of the Eye for Change computers and devices with the assistance of their clients and the "key" provided by the Government to locate any exculpatory evidence.  Indeed, Defendants created the evidence or data.  And, the Government has confirmed that it does not currently intend to use any material from the forensic image on the hard drive.

The Court also disagrees with Defendants' assertion that Magistrate Judge Greenberg ignored the considerable costs to Defendants of the FTK program and the unavailability of hardware or systems to host the hard drive created by the government.  This Court interprets

9

Magistrate Judge Greenberg's Report and Recommendation as acknowledging the considerable costs of the FTK program and the hardware or drives needed to host it, but correctly rejecting Defendants' request to have the Court bear the unknown expense of, or "blank check" for, providing same when an alternative means exists to locate any exculpatory evidence exists, by which defense counsel, accompanied by their clients, utilize the "key" provided by the Government to search the Eye for Change computers and devices, which will be provided by the Government.

Although Defendants assign error to Magistrate Judge Greenberg's "apparent[] accept[ing]" of the Government's argument that having the Government subpoena the computers and devices from Eye for Change to supply to defense counsel will help provide reasonable access to the data to Defendants, this Court disagrees. In fact, by ordering the Government to do so, this Court submits that it is helping ensure reasonable access without attempting to authorize the issuance of a "blank check" to Defendants.

Criminal Rule 16 does not require the Government to enable Defendants to conduct sophisticated searches of the electronic discovery. Again, each Defendant can arrange with his or her counsel to sit down at the original computer or device that he or she used at Eye for Change and view the data in its native or original form. Defendants have not even tried to do this; instead in their pre-hearing written submissions, Defendants have represented, and in Defendants' Objections, they have continued to assert that the hard drive provided by the Government is unsearchable. But Zinn's hearing testimony demonstrates that with the assistance of their clients, the "key" the Government has provided, and the original devices and computers from Eye for Change, defense counsel can follow a step-by-step process for conducting the searches. And, since

it is uncontroverted that Defendants' counsel can access the discovery via the process just outlined, any "constitutional implications" are addressed.

## IV.     CONCLUSION

For the reasons set forth herein, Defendants' Objections are overruled, and Magistrate Judge Greenberg's Report and Recommendation is ADOPTED, with the additional order that the Government issue an administrative subpoena to retrieve the original devices from Defendant Eye for Change and make those available to defense counsel on dates and at times for individual review with their respective clients.


**IT IS SO ORDERED.**

                                              s/*Pamela A. Barker*
                                              PAMELA A. BARKER
Date:   April 28, 2022                      U. S. DISTRICT JUDGE